NATIONAL BANK OF EASTERN ARKANSAS,
EXECUTOR *v.* YOUNG.

4-9868                                                       248 S. W. 2d 375

Opinion delivered May 5, 1952.

---

*Mann & McCulloch,* for appellant.

*Norton & Norton,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal challenges correctness of an order of St. Francis Probate Court directing National Bank of Eastern Arkansas (as executor under the will of James R. Young) to mortgage estate lands for debt-paying purposes. This brings to us for construction §§ 127 and 140 of the Probate Code, as amended by § 11 (a) of Act 255 of 1951.

The appellee is Young's widow. She is also the principal beneficiary under the will. Her petition was filed pursuant to the provisions of § 129 of the Code, Ark. Stats., § 62-2706. Following the allegation of factual matters she prayed that the executor be directed to show cause why it should not mortgage the realty.

In its response the executor admitted accuracy of the petition's recitals, but questioned the court's power to authorize the mortgage. All essentials bearing upon the proposed transaction were developed in a hearing where the evidence was preserved. As reflected by the record and bill of exceptions the facts are substantially as follows:

Young died in April, 1950. At that time he owned approximately 600 acres of valuable farm lands in St. Francis county. Letters testamentary were issued to appellant April 8, 1950. The bank is still the duly qualified and acting executor. Prior to 1950 Young and his wife had mortgaged this acreage to Federal Land Bank of St. Louis. Otherwise the property was unencumbered

when Young died. Installment payments on the Land Bank loan are in default and the mortgage is subject to foreclosure. The debt balance was approximately $37,000 on March 1 of this year. This creditor has not filed a claim against the estate, nor have foreclosure proceedings been brought.

Since appointment of the executor unsecured claims of about $19,500 have been filed and regularly allowed and the statutory limitation within which demands must be asserted has expired. The decedent did not own any personal property other than personal effects and household goods of relatively insignificant value. All of the unsecured claims are past-due and creditors are demanding payment.

Prudential Insurance Company of America has agreed with the executor to advance $58,000 on security of the land. Amortized payments would extend through a 15-year period with interest at $4\frac{1}{2}\%$ per annum. Proceeds would be used exclusively (a) to pay the unsecured claims, and (b) to discharge the Federal Land Bank's debt. As a condition precedent to making the loan, Prudential has required that an insurance policy be delivered to it as a guarantee that the mortgage is a valid first lien on the lands. Appellant has applied to a title insurance company for the requisite policy.

*First—Validity of the Proposed Mortgage.*—The Probate Court had power to authorize the mortgage. Pertinent parts of § 127 of the Probate Code, Ark. Stats., § 62-2704, are as follows:

(a) Real or personal property belonging to an estate may be sold, mortgaged, leased or exchanged under court order when necessary (1) for the payment of claims, (2) for the payment of a legacy given by the will of the decedent, (3) for the preservation or protection of assets of the estate, (4) for making distribution of the estate or any part thereof, or (5) for any purpose in the best interest of the estate.

It is properly conceded that under § 127 (a-1) the probate court has power to direct the personal repre-

sentative to execute realty mortgages *for the payment of claims*. In the case at bar such claims aggregating $19,500 are overdue. Each party to the litigation thinks it unlikely that sufficient funds to meet these claims could be procured through a second mortgage. They also agree that if a loan is appropriate it must be in an amount sufficient to discharge all of the obligations.

Section 127 (a) of the Probate Code does not expressly provide that property of the estate may be mortgaged to pay off existing liens. Prior to the passage of Act 195 of 1927 probate courts were without power to authorize a personal representative to mortgage the property of the estate to pay liens. The Act of 1927, however, was passed for the purpose of conferring that power on the court. *Reed* v. *Futrall, Receiver,* 195 Ark. 1044, 115 S. W. 2d 542. Act 195 of 1927 was amended by Act 22 of 1935, but the amendment relates to mortgages on homesteads of minors and is not here material.

Before enactment of the Probate Code in 1949 an executor could have been authorized by the probate court to execute a mortgage in the circumstances presented by this record. It seems illogical to now hold that it was the intention of the Legislature to withdraw the power to mortgage after such power had clearly existed for 22 years, and to assume that this was done on the sole ground that the power was not expressly incorporated in § 127 (a) of the Code. On the contrary, it clearly appears from § 127 (a) and related provisions of the Code that it was the legislative intent to extend, rather than restrict, the power of the probate court to authorize execution of mortgages on the property of the estate. The Legislature has placed the matter very largely within the sound discretion of probate courts. No doubt this is the intention of the very able committee having charge of the drafting of the Code.

Appellee has argued that the power of the probate court to authorize a mortgage to pay existing liens amounts to a mortgage "for the preservation or protection of the assets of the "estate" as provided in § 127 (a-3). We find, however, that it is not necessary

502

to pass on that construction in this case because the order here reviewed is clearly authorized by § 127 (a-5) of the Code.

After setting out four purposes for which a mortgage may be executed—one of which is for the payment of claims—it is then enacted, § 127 (a-5), that the court may authorize a mortgage *for any other purpose in the best interest of the estate.* The language is broad, and no doubt was intentionally made so to vest discretion in the supervising judicial tribunal. If this assumption is correct, our review in circumstances involving an order similar to the one under examination here, is to determine whether the court abused its discretion. Here the Probate Judge made the following findings:

"The refinancing of the indebtedness of the estate by a long-term loan, the payment of which is secured by a first lien on the real estate belonging to the estate, is necessary (1) for the payment of claims against the estate, (2) for the preservation and protection of the assets of the estate by payment of the indebtedness due the Federal Land Bank, (3) for making distribution of the estate; and (4) to permit the payment of the debts of the estate upon an annual amortization basis at a low rate of interest which will be in the best interest of the estate."

The testimony amply supports the court's finding that a provident policy of refinancing was proposed and that Prudential's proposed mortgage, when regularly executed, would constitute a valid first lien on the realty.

Affirmed.